# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| ROGER MICHAEL THOMAS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| Counter-Defendant, | : | |
| | : | No. 17-4522 |
| v. | : | |
| | : | |
| THE PRUDENTIAL INSURANCE | : | |
| COMPANY OF AMERICA, | : | |
| | : | |
| Defendant, | : | |
| Counter-Plaintiff. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                              **MAY 8, 2018**

      Plaintiff/Counter-Defendant Roger Michael Thomas ("Mr. Thomas") filed suit in this Court on October 11, 2017, against Defendant/Counter-Plaintiff The Prudential Insurance Company of America ("Prudential") seeking relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Prudential filed an Amended Answer to Plaintiff's Complaint and Counterclaim against Plaintiff for breach of contract on February 13, 2018 ("Counterclaim"). (Doc. No. 14.)

      Presently before the Court is Mr. Thomas' Motion to Dismiss Defendant's Counterclaim and Prudential's Memorandum of Law in Opposition. For the reasons noted below, Mr. Thomas' Motion is denied.

I. **BACKGROUND**[1]

Mr. Thomas was employed by the East Texas Medical Center Regional Healthcare System ("East Texas Medical Center") from November 9, 1993, until February 19, 2016. (Countercl. ¶ 3.) Mr. Thomas participated in a long term disability benefit plan (the "Plan") sponsored by East Texas Medical Center. (*Id.* ¶ 4.) The Plan is an "employee welfare benefit plan" under Section 3(I) of ERISA and was purchased by East Texas Medical Center through a Group Contract offered by Prudential. (*Id.* ¶¶ 5–6.)

On February 9, 2016, Mr. Thomas and East Texas Medical Center signed a Separation Agreement and General Release (the "Agreement"). (*Id.* ¶ 7.) Under the terms of the Agreement, Mr. Thomas would receive $177,580.00 in exchange for releasing all "Claims" against East Texas Medical Center and other "Released Parties." (*Id.* ¶ 9; Def.'s Mem. Law in Opp'n, Ex. A, Separation Agreement and General Release (the "Agreement") §§ 2.01, 3.02.) According to Prudential, the term "Released Parties" is defined in the Agreement as: "insurers, fiduciaries, employee welfare benefit plans, East Texas Medical Center Employee Injury Benefit Plan, plan sponsors, plan administrators, plan fiduciaries and all others in privity with them." (*Id.* ¶ 10 (citing Agreement Preamble).) Prudential asserts that it is a "plan fiduciary" and "insurer" of East Texas Medical Center and, therefore, a "Released Party" under the Agreement because it insures the East Texas Medical Center's obligations under the Plan and administers benefits claims. (*Id.* ¶ 11.) Accordingly, Prudential claims that because Mr. Thomas released the Released Parties from any and all claims, Mr. Thomas released Prudential from any and all obligations it may have owed to Mr. Thomas, which included any long term disability benefits. (*Id.* ¶¶ 12–14.)

---

[1] For the purpose of deciding this Motion, we take the facts alleged in the Counterclaim as true, as we must when deciding a Motion under Federal Rule of Civil Procedure 12(b)(6). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

Likewise, Prudential asserts that Mr. Thomas also waived his right to file a claim with Prudential for long term disability benefits, because Mr. Thomas allegedly released all claims against Prudential in the Agreement. (*Id.* ¶ 15.) Prudential claims Mr. Thomas knowingly waived his rights to an ERISA long term disability plan because he expressly carved out an exception for any "vested benefits under a retirement plan governed by ERISA." (*Id.* ¶ 19.) No such exception was made for any long term disability plan. (*Id.*)

Further, the Agreement contains an Indemnification clause, in which Mr. Thomas covenanted to:

> [N]ever name . . . any Released Party or their insurers as a Defendant, Cross-Defendant or Third-Party Defendant in any suit, nor will [Mr. Thomas] institute any cause of action or assert any claim against any Released Party or their insurers arising from, or in any way related to . . . any claim released herein.

(*Id.* ¶ 23 (quoting Agreement § 2.03) (alterations in original).) Despite this provision, Prudential alleges Mr. Thomas filed a claim for long term disability benefits under the released Plan. (*Id.* ¶ 26.) Throughout the administrative process, Mr. Thomas admitted that his alleged disability was the cause of his decision to leave East Texas Medical Center and that his medical issues pre-dated his entry into the Agreement on February 9, 2016. (*Id.* ¶ 27.)

Mr. Thomas brought suit in this Court on October 11, 2017.[2] Prudential filed an Amended Answer and Affirmative and Additional Defenses to Plaintiff's Complaint and Counterclaim against Plaintiff for breach of contract on February 13, 2018. In its Counterclaim, Prudential alleges Mr. Thomas breached the Agreement by bringing a claim against Prudential and seeks declaratory relief, injunctive relief, and attorney's fees. (*Id.* ¶ 35.) Mr. Thomas moves to dismiss the Counterclaim for a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Pl.'s Mem. Law in Supp.)

---

[2] Jurisdiction is proper in this Court under 29 U.S.C. § 1132(e)–(f) and 28 U.S.C. § 1331.

3

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678–79). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents."[3] *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

---

[3] The Third Circuit has also allowed courts to consider "concededly authentic document[s] upon which the complaint is based when defendant attaches such document to its motion to dismiss." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding legally deficient claims could survive motion to dismiss due to failure to attach dispositive documents). Here, Mr. Thomas references a Group Contract and a Certificate of Service already on the docket in his Memorandum of Law in Support of his Motion to Dismiss. Mr. Thomas asserts the Group Contract and the Certificate of Service preclude Prudential's ability to enforce the Agreement. Therefore, it is a concededly authentic document upon which the Countercl. is based and we find that it is appropriate for our review in deciding this Motion.

4

## III. DISCUSSION[4]

In support of his Motion, Mr. Thomas provides two main arguments as to why Prudential's Counterclaim should be dismissed: (1) Prudential forfeited any right to benefit from the Agreement and; (2) Prudential is not a party to or a direct third party beneficiary of the Agreement and, therefore, does not have standing to enforce the Agreement. (Pl.'s Mem. Law in Supp. 3–9.) We will address Mr. Thomas' arguments in that order.

### A. Prudential Has Not Forfeited Any Right to Benefit from the Agreement

Mr. Thomas argues Prudential forfeited its right to benefit from the Agreement due to provisions in Prudential's Certificate of Coverage and the Group Contract covering the Plan that it provided to Mr. Thomas. (*Id.* at 5.) The Certificate of Coverage states, in relevant part: "For the purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential." (*Id.* (citing Comp., Ex.1, Certificate of Coverage at 9).) Further, in the Group Contract for the Plan, Prudential stated: "The Contract Holder [East Texas Medical Center], its agents, representatives or employees, or any Covered Person under the Group Contract is not the agent or representative of Prudential." (*Id.* (citing Admin. R., Ex. 11, East Texas Medical Center Group Contract ("Group Contract") § K).)

According to Mr. Thomas, East Texas Medical Center cannot bind Prudential to any contract or agreement, because Prudential is explicitly clear that East Texas Medical Center is not its agent. (Pl.'s Mem. Law in Supp. 5 (citing Group Contract § I ("Only an officer of Prudential has authority . . . to bind Prudential by a promise or representation or by information

---

[4] The Agreement at issue in this Motion to Dismiss contains a "Governing Law" provision requiring performance, governance, enforcement, and interpretation in accordance with the laws of the state of Texas. (Agreement § 6.04.) Accordingly, we will apply Texas law when considering this Motion. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.")

5

given or received.")).) Mr. Thomas argues that he relied on this representation from Prudential and Prudential "has an obligation to administer the Plan in accordance with its terms." (*Id.* at 5 (citing 29 U.S.C. §§ 1102, 1104; *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)).) Mr. Thomas asserts that Prudential prevented East Texas Medical Center from binding it to any contract and, therefore, cannot be bound under "traditional principles of contract and agency law." (*Id.* at 6.) Mr. Thomas illustrates his point by arguing that "had this situation been reversed and [East Texas Medical Center], or even [Mr.] Thomas, attempted to hold Prudential to the terms of this Agreement, Prudential would be the first to say it was not a party because it did not intend to enter into a contract . . . ." (*Id.*) Mr. Thomas further supports this argument through other issues of contract law, which he concisely states as: "A non-signatory entity seeking the benefits of a contract is estopped from simultaneously attempting to avoid the burdens." (*Id.* (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732 (Tex. 2005).)

Mr. Thomas' argument, however, misses the mark. The Agreement does not bind or place any obligations or burdens on Prudential. Section 6.12 states: "This Agreement *shall be binding upon Employee* . . . and *shall inure to the benefit of Employer and the other Released Parties*, as well as to their respective heirs, executors, administrators, representatives, trustees, successors, and assigns." (Agreement § 6.12 (emphasis added).) By the plain language of the Agreement, the only party bound is Mr. Thomas. We find no obligation, promise, or representation binding on Prudential anywhere in the Agreement. Instead, the Agreement makes clear that Mr. Thomas agreed to release Prudential from any and all obligations under the Plan.

Prudential argues that by waiving his right to an ERISA claim and releasing Prudential from any obligations, Mr. Thomas was merely providing Prudential a benefit. (Def.'s Mem. Law in Opp'n 13.) Mr. Thomas has not shown any reason, in law or fact, why Prudential cannot

6

receive a voluntary benefit. Accordingly, Mr. Thomas' Motion to Dismiss cannot prevail on this theory.

B. **Prudential Has Standing to Enforce the Agreement as a Released Party**

Both Mr. Thomas and Prudential agree that Prudential qualifies as a "Released Party" under the Agreement. The Agreement states:

> This [Agreement] is made by and between Mike Thomas ("Employee") and East Texas Medical Center Regional Healthcare System, whose principal place of business is 1000 South Beckham, Tyler, Texas 75701 (referred to herein as "Employer"), and its owners, officers, directors . . . insurers, fiduciaries, employee welfare benefit plans, East Texas Medical Center Employee Injury Benefit Plan, plan sponsors, plan administrators, plan fiduciaries and all others in privity with them . . . (collectively referred to herein as the "Released Parties"). Employee and Released Parties are collectively referred to herein as the "Parties."

(Agreement Preamble.) Mr. Thomas argues that Prudential is not a "party" to the Agreement and, therefore, cannot enforce it. (Pl.'s Mem. Law in Supp. 3–4.) Mr. Thomas asserts that simply because a "person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." (*Id.* at 4 (citing *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647 (Tex. 1999)).) Furthermore, Prudential did not "sign the Agreement, was not aware of its existence until 'recently,' [and] did not negotiate any of the terms." (*Id.*) Mr. Thomas argues that the term "Released Parties" is used to refer to a group, collectively, and does not grant those members the "status and obligations of a contractual and signatory 'party.'" (*Id.* at 4–5.)

Contrarily, Prudential argues that it is a party to the Agreement because Mr. Thomas and East Texas Medical Center intended for it to be. (Def.'s Mem. Law in Opp'n 6.) Prudential argues that "the concept that only signatories qualify as 'parties' operates — at most — as nothing more than a default rule . . . and '[c]ontract law generally permits the parties to vary

7

default rules by agreement.'" (*Id.* at 7 (quoting *Trident Steel Corp. v. Vecta Oil and Gas Ltd.*, No. 16-CV-339, 2018 WL 880819, at *5 n.6 (S.D. Tex. 2018) (alteration in original)).) In its Memorandum of Law in Opposition, Prudential offers numerous instances of caselaw where parties altered "default rules." However, most of the cases Prudential cites relate specifically to mandatory arbitration provisions and their applicability under the Federal Arbitration Act. (*E.g.*, Def.'s Mem. Law in Opp'n 7 (citing *Athas Health, LLC v. Trevithick*, No. 05-16-219, 2017 WL 655926 (*Butto v. Collecto Inc.*, 802 F. Supp. 2d 443 (E.D.N.Y. 2011); *Hartford Fin. Sys., Inc. v. Fla. Software Servs., Inc.*, 550 F. Supp. 1079 (D. Me. 1982); Tex. Ct. App. Feb. 17, 2017); *26th St. Hosp., LLP v. Real Builders, Inc.*, 879 N.W.2d 437 (N.D. 2016)).) And while Prudential cites an early Twentieth Century Delaware Superior Court case that is more factually on-point, that law is not binding under Texas law. *See Jonas v. Buck*, 90 A. 86, 88 (Del. Super. Ct. 1914).

Under the caselaw provided, and the text of the Agreement, we are not persuaded that Prudential is a contractual party to the Agreement. We agree with Mr. Thomas that the contractually defined term "Parties" is used to collectively refer to a group of entities, not as term of art to identify parties to a contract. This is made clear after considering that only two of the three defined terms are included as "Parties." The definition sentence says: "Employee and Released Parties are collectively referred to herein as the 'Parties.'" (Agreement Preamble.) However, the simplest reading of the previous section clearly establishes Mr. Thomas as the Employee, East Texas Medical Center as the Employer, and the other entities, including Prudential, as the Released Parties. If the term "Parties" is meant to define the contracting parties, then the Employer could not be considered a party to the Agreement.

Furthermore, under Texas law, in order to prove a breach of contract, there must be an enforceable contract. *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex.

8

Ct. App. 2005). An enforceable contract exists where there is: (1) an offer; (2) an acceptance in strict compliance with terms of offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and (6) consideration. *Id.* Prudential does not deny that it had no prior knowledge of the Agreement and did not participate in its formation. (Def.'s Mem. Law in Opp'n 5.) It is clear, then, that Prudential never came to the proverbial "meeting of the minds" and Prudential does not argue it is now assenting to be bound to the Agreement. Therefore, Prudential cannot be considered a contracting party to the Agreement.

However, we find that Prudential clearly has standing to enforce the Agreement as a Released Party. As Prudential notes, the Agreement contains several provisions intending to grant direct benefits to the Released Parties. (*Id.* at 9 (citing Agreement §§ 2.01, 2.03, 3.02, 5.03, 6.05, 6.12).) To this effect, Prudential argues that the unambiguous intention of the contracting parties was to grant these rights and benefits to the Released Parties. (*Id.* at 6 (quoting *Great Am. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used.")).) We find ample support in the Agreement that the contracting parties intended to give the Released Parties these rights and benefits, as well as mechanisms to enforce their performance of the Agreement. (Agreement §§ 2.01, 2.03, 3.02, 5.03, 5.05, 6.07, 6.11, 6.12, 6.16.)

However, Mr. Thomas argues that Prudential is an incidental third party to the Agreement and is not entitled to any rights under the Agreement. (Pl.'s Mem. Law in Supp. 7–9.) Section 6.11 of the Agreement explicitly precludes third party beneficiaries. The section states:

9

> No Third-Party Beneficiaries. This Agreement has been executed for the sole benefit of the Parties hereto and is not intended for the benefit of any third party. No other parties shall have any rights hereunder, nor shall they be entitled to assume that the Parties hereto will insist upon strict performance of the mutual obligations arising out of this Agreement for the benefit of such other parties or otherwise.

(Agreement § 6.11.) Mr. Thomas argues that this section shows there was no intention by the Parties to create a benefit for any third party and that the court cannot create a benefit by implication. (Pl.'s Mem. Law in Supp. 8 (citing *MCI Telecomms.*, 995 S.W.2d at 651).) Mr. Thomas is correct that this section clearly states that the Agreement provides "no other party" any rights or benefits. (*Id.* at 8 (quoting Agreement § 6.11).)

However, Mr. Thomas is incorrect that Prudential is a third party. Section 6.11 juxtaposes the phrase "any third party" with the defined term "Parties." As Mr. Thomas admits, Prudential qualifies as a Released Party and is properly included in the definition of Parties. (*Id.* at 4.) With that in mind, the Section clearly states the Agreement was made for the sole benefit of the Parties, including Prudential, not for any third party. Additionally, in determining the intentions of a written contract, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original). Thus, Section 6.11 cannot be interpreted as prohibiting Prudential's standing, otherwise the numerous provisions in the Agreement granting Prudential rights and benefits would be rendered meaningless. Therefore, we find that Section 6.11's restrictive effect is limited to "other parties," as stated in the section, and does not apply to Released Parties, such as Prudential. Accordingly, Mr. Thomas' Motion to Dismiss cannot prevail on this argument.

## IV. CONCLUSION

For the reasons set forth above, Mr. Thomas' Motion to Dismiss Defendant's Counterclaim is denied.

An appropriate Order follows.